1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9    Stephanie Bozicevic,                    No. CV-20-00984-PHX-JJT

10                    Plaintiff,             **ORDER**

11   v.

12   Commissioner of Social Security
13   Administration,

14                    Defendant.

15

16          Plaintiff Stephanie Bozicevic challenges the partial denial of her Application for

17   Disability Insurance Benefits under the Social Security Act ("the Act") by Defendant,

18   Commissioner of the Social Security Administration ("Commissioner" or "Defendant").

19   Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that partial

20   denial, and the Court now addresses Plaintiff's Amended Opening Brief (Doc. 26, Pl. Br.),

21   Defendant's Response Brief (Doc. 28, Def. Br.), and Plaintiff's Reply. (Doc. 32, Reply.)[1]

22   The Court has reviewed the briefs and Administrative Record (Doc. 17, AR.), and now

23   reverses the Administrative Law Judge's ("ALJ") decision (AR. at 759-90) and remands

24   for further proceedings.

25

26

27   _____

28          [1] The Commissioner having shown good cause, the Court accepts and will consider
     the Commissioner's untimely Response Brief filed on April 21, 2021. (Doc. 28.)

## I.      BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on March 28, 2014, for a period of disability benefits beginning on June 7, 2013, her alleged onset date. (AR. at 197-98.) After a hearing on September 15, 2016, ALJ Christa Zamora issued a written decision denying Plaintiff's claim on January 12, 2017. (AR. at 9–25.) The Social Security Appeals Council upheld the ALJ's Denial in a letter dated January 8, 2018 (AR. at 1-6), and Plaintiff sought judicial review on March 8, 2018. (AR. at 849-850.) On November 9, 2018, the United States District Court for the District of Arizona reversed the ALJ's decision and remanded Plaintiff's claim for a new hearing. (AR. at 854-99.)

On November 19, 2019, Plaintiff attended a second hearing presided over by ALJ Carla Waters. (AR. at 793-828.) On May 5, 2020, ALJ Waters issued a partially favorable determination (AR. at 759-90) concluding Plaintiff was disabled from January 29, 2018 to March 26, 2019. (AR. at 771, 783.) For the remainder of the relevant period (June 7, 2013 through January 28, 2018 and March 27, 2019 through the date of the decision), the ALJ concluded Plaintiff could perform her past relevant work as a claims administrator as that job is generally performed in the national economy. (AR. at 782-83.)[2] Hence, the ALJ found Plaintiff was not disabled under the Act for those periods. (AR. at 772, 782-83.) After Plaintiff exhausted her administrative remedies,[3] she once again sought judicial review. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability from the period beginning June 7, 2013, through the date of the decision based on the following severe impairments: occipital neuralgia, migraine headaches, cervical disk disease, chronic pain

---

[2] The ALJ identified no other jobs Plaintiff could perform during the periods of non-disability. (AR. at 782-83.)

[3] The second Appeals Council denial is missing from the administrative record, but the Commissioner answered and admitted Plaintiff exhausted her administrative remedies. (Doc. 16.)

1    syndrome, myofascial pain syndrome, early degenerative disease in the hands,

2    gastroesophageal reflux disease, and fibromyalgia. (AR. at 765.) Beginning January 29,

3    2018, the effective date of Plaintiff's disability, the ALJ found claimant suffered from the

4    additional severe impairment of status post left radius fracture. (AR. at 765.)

5         The ALJ's residual functional capacity ("RFC") determinations differ between the

6    periods of disability and non-disability. (AR. at 768-69, 772.) For the period of disability,

7    the ALJ found that Plaintiff could perform sedentary work with a limitation to ***occasional***

8    ***handling and fingering***; occasional, forceful grasping; occasional, forceful pinching;

9    occasional overhead reaching; and occasional bending, stooping, and crouching; with an

10   additional limitation to avoiding work around heights or moving machinery. (AR. at 768-

11   69.) The ALJ found Plaintiff's left arm fracture sustained on January 29, 2018, constituted

12   an additional severe impairment as of that date justifying a limitation to only occasional

13   handling and fingering. (AR. at 768-771.) The vocational expert testified a hypothetical

14   individual limited to occasional handling and fingering could not perform Plaintiff's past

15   relevant work. (AR. at 826.) The ALJ concluded Plaintiff had not acquired transferable

16   skills to other work and that, during the period of disability, the Medical-Vocational rules

17   directed a finding of disabled. (AR. at 771.)

18        During the periods of non-disability, the ALJ found that Plaintiff could perform

19   sedentary work as defined in the regulations with ***frequent handling and fingering***;

20   occasional overhead reaching; occasional bending, stooping, and crouching; and an

21   additional limitation to avoiding work around heights or moving machinery. (AR. at 772.)

22   In her discussion, the ALJ further noted Plaintiff would be limited to occasional, forceful

23   grasping and pinching during the periods of non-disability.[4] At the second hearing, the ALJ

24

25   ────────────────

26        [4] Although ALJ Waters's RFC finding for the periods of non-disability does not
     explicitly include occasional, forceful grasping and pinching (AR. at 772), in her discussion

27   of the rationale supporting her RFC, she found the evidence supported such a limitation
     even during the periods of non-disability. (AR. at 778-79, 780-81.) The Commissioner

28   concedes that while the ALJ did not include this limitation in her RFC for the periods of
     non-disability, "[e]lsewhere in the decision, the ALJ explain[ed] that Plaintiff could
     frequently handle and finger, and occasionally engage in forceful grasping and forceful

1   posed a hypothetical question to the vocational expert based on these limitations. (AR. at

2   823-24.) The vocational expert testified an individual with those limitations could perform

3   Plaintiff's past relevant work as a claims administrator. (AR. at 824.) The ALJ found

4   Plaintiff could perform her past relevant work as a claims administrator during these

5   periods, but identified no other jobs Plaintiff could perform. (AR. at 782-83.)

6   **II.    LEGAL STANDARD**

7          In determining whether to reverse an ALJ's decision, the district court reviews only

8   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

9   517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

10  determination only if the determination is not supported by substantial evidence or is based

11  on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

12  relevant evidence that a reasonable person might accept as adequate to support a conclusion

13  considering the record as a whole. *Id.* To determine whether substantial evidence supports

14  a decision, the Court must consider the record as a whole. *Id.* Generally, "[w]here the

15  evidence is susceptible to more than one rational interpretation, one of which supports the

16  ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947,

17  954 (9th Cir. 2002) (citations omitted).

18         To determine whether a claimant is disabled for purposes of the Act, the ALJ

19  follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

20  proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

21  *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

22  the claimant is presently engaging in substantial gainful activity. 20 C.F.R.

23  § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

24  medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At

25  step three, the ALJ considers whether the claimant's impairment or combination of

26  impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

27

28  pinching activities, consistent with [independent medical examiner Dr. Lucia McPhee's] assessment" during the periods of non-disability. (Def. Br. at 20.)

of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

If a person is disabled, her disability benefits can end if substantial evidence demonstrates that her impairments have medically improved such that she can engage in substantial gainful activity. *See* 42 U.S.C. § 423(f). To determine whether there is medical improvement, an ALJ must compare the claimant's RFC when she was last disabled to her current RFC. 20 C.F.R. § 404.1594(b)(7).

## III.   ANALYSIS

Plaintiff raises five arguments for this Court's consideration: (1) the ALJ erred by finding Plaintiff was not disabled between June 7, 2013 and January 29, 2018 (Pl. Br. at 13-14); (2) the ALJ erred by finding that medical improvement occurred on March 27, 2019 (Pl. Br. at 14-16); (3) the ALJ erred by rejecting the opinion of a physical therapist without citing sufficient reasons (Pl. Br. at 16-17); (4) "the ALJ erred in her analysis of Mrs. Bozicevic's credibility" (Pl. Br. at 17-19); and (5) the credit-as-true rule compels the Court to remand for computation of benefits. (Pl. Br. at 19-21.) The Court finds reversible error and remands for further proceedings.

### A.   On the period of non-disability between June 7, 2013 and January 29, 2018, the Court affirms.

At Plaintiff's second hearing, the vocational expert testified an individual limited to only occasional handling and fingering could not perform Plaintiff's past relevant work. (AR. at 826.) Plaintiff argues that because she "was limited to occasional forceful grasping and occasional forceful pinching activities" during the periods of non-disability, the Dictionary of Occupational Titles ("DOT") instructs she is necessarily limited to

occasional handling and fingering, and hence, disabled, per the vocational expert's testimony. (Pl. Br. at 13-14, AR. at 826.)

In support of her argument, Plaintiff cites the DOT's definition of "handling," which includes "seizing, holding, **grasping**, turning or otherwise working with [a] hand or hands," and the definition of "fingering," which includes "[p]icking, **pinching**, or otherwise working primarily with the fingers rather than the whole hand or arm as handling." (Pl. Br. at 13-14, emphasis in original.) As Plaintiff puts it, "Therefore, a limitation to occasional grasping and pinching limits [her] to occasional handling and fingering." (Pl. Br. at 14.) Since the VE testified an individual limited to occasional handling or fingering could not perform Plaintiff's past relevant work (AR. at 826), and the ALJ concluded Plaintiff had acquired no transferable skills to other work (AR. at 771), Plaintiff argues she was disabled between June 7, 2013 and January 29, 2018. (Pl. Br. at 13-14.)[5] The Court disagrees.

Social Security Ruling ("SSR") 00-4p explains, "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert], [vocational specialist], or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3; *see, e.g.*, *Rebensdorf v. Berryhill*, 773 Fed. App'x 874, 877-78 (9th Cir. 2019) ("We reject Rebensdorf's argument that the ALJ failed to reconcile a conflict between the [DOT] and the [vocational expert's] testimony, because, contrary to Rebensdorf's argument, not all jobs classified as 'light work' require six hours of standing or walking per day.") (citing SSR 00-4p); *Gutierrez v. Colvin*, 844 F.3d 804, 808-809 (9th Cir. 2016) (finding no apparent conflict between the DOT and a vocational expert's testimony when the vocational expert testified a hypothetical individual could perform the

---

[5] The Court notes it is somewhat ambiguous whether the ALJ intended to include a limitation to "occasional, forceful" grasping and pinching in her RFC finding for the periods of non-disability, but the Court need not address the ambiguity to resolve the issue Plaintiff raised on appeal.

1    job of cashier, which requires frequent reaching under the DOT, despite being limited to

2    no overhead reaching with her right upper extremity); *accord Cortez v. Colvin*, 2014 WL

3    3734308, at *2 (D. Nev. July 28, 2014) ("Cortez attempts to create the specter of a conflict

4    by arguing that absence if sufficient [*sic*] for an opposition. This is not only illogical, but

5    it would render vocational experts useless if their testimony could not add to, or depart

6    from, the [DOT]. Accordingly, when the [DOT] is silent on a matter, several courts have

7    held that no conflict exists.") (internal citations omitted); *see also* SSR 96-8P, 1996 WL

8    374184, at *3 ("[P]articular occupations may not require all of the exertional and

9    nonexertional demands necessary to do the full range of work at a given exertional level.");

10   *contra Lockwood v. Comm'r of Social Security Admin.*, 914 F.3d 87, 91-93 (2nd Cir. 2019).

11        In *Gutierrez*, the Ninth Circuit reasoned that an inquiry into a potential conflict in

12   the vocational evidence is only necessary when the conflict between the VE's testimony

13   and the DOT is "obvious or apparent." *Gutierrez*, 844 F.3d at 808 ("For a difference

14   between an expert's testimony and the Dictionary's listings to be fairly characterized as a

15   conflict, it must be obvious or apparent. This means that the testimony must be at odds

16   with the Dictionary's listing of job requirements that are essential, integral, or expected.")

17   An ALJ is not "free to disregard the [DOT's] definitions . . . [b]ut tasks that aren't essential,

18   integral, or expected parts of a job are less likely to qualify as apparent conflicts that the

19   ALJ must ask about." *Id.*

20        The Court finds that the VE's testimony—that a hypothetical individual limited to

21   "occasional, forceful" grasping and pinching, but otherwise frequent handling and

22   fingering (among other limitations not at issue), could perform Plaintiff's past relevant

23   work of claims administrator—does not obviously or apparently conflict with the DOT. As

24   can be inferred from the VE's testimony, it is reasonable that an individual limited to

25   "occasional, forceful" pinching and grasping could otherwise seize, hold, grasp, or turn

26   objects with the hands, or pick, pinch, or otherwise work primarily with the fingers with

27   normal force or vigor. Moreover, the Court recognizes the DOT code cited by the ALJ and

28   the VE (AR. at 770, 822), which denotes the job of "SUPERVISOR, CLAIMS" (Alternate

title: Claims Administrator), requires only ***occasional*** handling and fingering to begin with, DOT 241.137-018 SUPERVISOR, CLAIMS, available at 1991 WL 672240 (emphasis added).[6]

In sum, the Court disagrees with Plaintiff that a limitation to "occasional, forceful" pinching and grasping would necessarily limit Plaintiff to occasional handling and fingering under the DOT. There is no obvious or apparent conflict between the vocational expert's testimony and the DOT, and the Court affirms the ALJ's finding on this issue.

### B. Substantial Evidence Supports the ALJ's Determination that Medical Improvement Occurred on March 27, 2019.

Plaintiff argues that the ALJ erred by finding that medical improvement occurred effective March 27, 2019. In support of her conclusion that medical improvement occurred, the ALJ addressed the report of consultative examiner Robert Gordon, D.O., who opined that Plaintiff's "wrist and hand were within normal limits," and who "concluded [Plaintiff] retained the [RFC] to frequently handle with the left non dominant upper extremity and she had no restrictions on the right." (AR. at 772.)[7] The ALJ noted Plaintiff's report of pain during the examination (AR. at 772) but, beyond that, found "very little evidence of treatment for [Plaintiff's] wrist impairment after March 26, 2019, which supports the conclusion her symptoms improved and [her RFC] increased." (AR. at 772.) Later in the decision, when discussing her reliance on the several medical opinions of record, the ALJ

---

[6] The Court recognizes that "[n]either the [Dictionary of Occupational Titles] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). The Court takes no position on which source is correct.

[7] Dr. Gordon further concluded Plaintiff could occasionally lift or carry weights ranging from 21 to 50 pounds, frequently lift or carry weights of 11 to 20 pounds, and continually lift or carry weights up to 10 pounds; stand or walk for four hours at one time and six hours total in a day; sit for eight hours at one time and eight hours in a day; continually use either foot for the operation of foot controls; frequently climb stairs, ramps, ladders, or scaffolds; frequently crawl; and continually balance, stoop, kneel, or crouch. (AR. at 1060-62.) Dr. Gordon found Plaintiff could generally tolerate most environmental conditions such as pulmonary irritants, heat, cold, and humidity, and that she was generally capable of physical activities such as shopping, travelling alone, ambulating without assistance, feeding herself, and handling paper files. (AR. at 1063.)

assigned "partial weight" to Dr. Gordon's opinion as of March 27, 2019, but "[m]inimal weight" during the period of disability. (AR. at 781.) The ALJ explained only that "[Dr. Gordon's] opinion supports the conclusion reached in this decision [Plaintiff] is not precluded from performing sedentary work with the limitations found in this decision," and that "[Plaintiff's] medical condition improved and that as of [March 27, 2019], she regained the ability to frequently handle, rather than occasionally." (AR. at 781.)

Plaintiff asserts that "no reasonable person would conclude that Dr. Robert Gordon's consultative exam supports a finding of medical improvement of Mrs. Bozicevic's ability to handle and finger," and that the ALJ failed to explain her deviation from the remainder of Dr. Gordon's opinion. (Pl. Br. at 14.) Plaintiff also notes the brief period between the consultative examination and Plaintiff's second hearing, and asserts that "[f]inding medical improvement between March 2019 and the hearing on November 2019 fails to consider the record as a whole which includes six years of treatment notes." (Pl. Br. at 15.) Plaintiff contends additional evidence dated after March 2019 supports ongoing impairment of the hands and other treatment indicative of impairment and supportive of disability. (AR. at 15-16.)

The Court will evaluate a closed period of disability benefits by comparing the evidence from the applicable periods of disability and non-disability. *Attmore v. Colvin*, 827 F.3d 872, 876 (9th Cir. 2016) ("We therefore hold that, in closed period cases, the ALJ should compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement."). Examples of evidence must reflect "broader development" in the claimant's medical condition. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).

To begin, it is not legal error to deviate from a consultative examiner's opinion, accepting or rejecting portions of it as an ALJ may see fit, provided the ALJ gives specific, legitimate reasons supported by substantial evidence for doing so when that examiner's opinion is contradicted in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing the specific, legitimate standard as it applies to the opinion of an examining

physician); *accord Michael H. v. Comm'r of Social Security*, 2021 WL 2012572, at *3 (W.D. Wash. May 20, 2021) (holding an ALJ provided specific, legitimate reasons for rejecting an examiner's specific conclusions regarding manipulative limitations, despite otherwise assigning "partial weight" to the opinion); *Gregory M. v. Saul*, 2020 WL 1847870, at *2-3 (D. Or. April 13, 2020) (affirming the ALJ properly deviated from an examining physician's opinion, which the ALJ generally assigned "significant weight" to, by providing "sufficiently specific and legitimate reasons"); *cf Vasquez v. Berryhill*, 2018 WL 3725766, at *5 (C.D. Cal. Aug. 3, 2018) (holding reversible error exists when the ALJ accords weight to a disabling medical opinion and then deviates from that opinion without any explanation).

The Court also acknowledges that a consultative examiner's opinion alone can amount to substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[The consultative examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant.]") (internal citations omitted). This can be true even when that consultative examiner reviewed no medical records, as is the case here. *See Castaneda v. Astrue*, 344 Fed. App'x 396, 398 (9th Cir. 2009) (internal citations omitted) (holding that ALJ did not err in relying on the report of a consultative examiner who did not review a previous MRI record because the examiner's report rested on his own independent examination of plaintiff and was consistent with the overall record) (citing *Tonapetyan*, 424 F.3d at 1149); *accord Sims v. Comm'r Social Sec. Admin.*, 2015 WL 1517421, at *8 (D. Or. Apr. 1, 2015) ("Plaintiff challenges the 'great weight' accorded by the ALJ to Dr. Brenneke's opinion on the basis that Dr. Brenneke's inability to review plaintiff's previous medical records materially affected his opinion. Plaintiff's argument is erroneous; a consultative examiner is not legally obligated to review claimant's medical records.") (citing *Castaneda*, 344 Fed. App'x 396); *Fortes v. Astrue*, 2009 WL 734161, at *3 (S.D. Cal. Mar. 18, 2009) (ALJ did not err in relying on a report from a consultative examiner who failed to review claimant's medical records because the examiner obtained a medical history from plaintiff and performed his own orthopedic examination).

The Court finds that in her decision to assign "partial weight" to Dr. Gordon's opinion effective March 27, 2019, the ALJ cited nothing that was not conclusory or circular. (AR. at 781.) ("This decision supports the conclusion reached in this decision that the claimant's medical condition improved and that as of [March 27, 2019], she regained the ability to frequently handle, rather than occasionally."). But, alone, the ALJ's failure to explain, in coherent terms, any deviation from Dr. Gordon's opinion is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006) (noting a line of cases indicating an error "inconsequential to the ultimate nondisability determination" is harmless) (internal citations omitted). As the Commissioner correctly points out, accepting Dr. Gordon's opinion as true, Plaintiff is capable of far more strenuous work activity than the ALJ identified. (D. Br. at 20, n. 13.)

Plaintiff also contends the ALJ's analysis of medical improvement did not sufficiently account for post-improvement treatment notes indicating "inflammatory primary distribution osteoarthritis with associated fibrocystic overlay"; Plaintiff's receipt of a Kenalog injection, which is a treatment for joint pain, swelling, and stiffness; her prescription for an oral steroid; a fractured foot; and an endoscopy. (Pl. Br. at 15.) Plaintiff contends that "[w]hile Dr. Posner did not specifically identify the joints he treated were located in [Plaintiff's] hands, no reasonable person would conclude that Dr. Posner excluded references to her hands." (Pl. Br. at 15.)

The Court finds that while Plaintiff's post-improvement treatment records contain some references to her ongoing medical issues, the ALJ's conclusion that medical improvement occurred is supported by substantial evidence and is a rational interpretation of the record. *Thomas*, 278 F.3d at 954. ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Plaintiff may have experienced ongoing symptoms after March 2019, but they are poorly documented. The medical records of her physical medicine physician, Dr. Atul Patel, are handwritten and mostly illegible for the period shortly before and after the ALJ found medical improvement. (AR. at 1105-1106.) Dr. Posner's findings from this

1    time are unclear, equivocal, and occasionally difficult to discern. The Court does note,

2    however, that Dr. Posner's prescription of the steroid Prednisone appeared to be effective.

3    In April 2019, Dr. Posner suggested a steroid trial of 10mg Prednisone "while we further

4    evaluate the pattern of pain and its associated response to steroid reflected by any decrease

5    in [Plaintiff's] sedimentation rate . . . ." (AR. at 1198.)  Lab results from June 2019 indicate

6    Plaintiff's sedimentation rate had fallen to within the reference range (AR. at 1203),

7    whereas her sedimentation rate had previously been high in November 2018 during the

8    period of disability. (AR. at 1208.) During Plaintiff's return visit in August 2019,

9    Dr. Posner stated in regard to Plaintiff's medication response, "[Plaintiff's] interim history

10   reviewed [Plaintiff's] general comfort on current order regimen for management of her

11   osteoarthritis and osteoporosis . . . ." (AR. at 1197.) In October 2019, while Dr. Posner

12   noted the "typical osteoproliferative change about the [distal interphalangeal joints] and

13   evolving bunion deformity," he recommended maintaining the status quo, stating that

14   "[Plaintiff] may continue with current maintenance medicines . . . ." (AR. at 1196.)

15       Conversely, Dr. Gordon's conclusions find support in his examination and

16   observation of Plaintiff. He documented, for instance, normal muscle bulk and strength in

17   Plaintiff's upper extremities with normal grip. (AR. at 1057.) He noted a radial deviation

18   deformity in Plaintiff's left wrist consistent with her previous fracture and diffuse pain with

19   palpation to the wrist and with movement (AR. at 1057), but that other clinical signs were

20   negative, and that Plaintiff exhibited no atrophy or synovitis. (AR. at 1057.) He further

21   documented Plaintiff could pick up small coins with both hands, screw a nut onto a bolt,

22   and write her name without difficulty, despite her complaints of left wrist pain with all fine

23   motor movement maneuvers. (AR. at 1057.)

24       Plaintiff's reference to post-improvement treatment notes are unconvincing.

25   Dr. Gordon's findings regarding Plaintiff's manipulative limitations are properly supported

26   by his examination and, in this case, his opinion constitutes substantial evidence of medical

27   improvement. The Court finds substantial evidence supports the ALJ's finding, and that

28   the ALJ did not err by relying upon Dr. Gordon's opinion.

1

2

     **C.**    **The ALJ erred by rejecting physical therapist Richard Randall's opinion without citing germane reasons supported by substantial evidence.**

3

4

5

6

7

8

9

10

11

12

13

14

15

     Plaintiff argues that the ALJ erred by rejecting the opinion of a physical therapist without citing sufficient reasons. The record includes a January 22, 2014 functional capacity evaluation ("FCE") and summary report authored by physical therapist, Richard S. Randall, who performed an FCE of Plaintiff at the behest of an attorney. (AR. at 325-34.) Mr. Randall concluded, *inter alia*, that "[b]ased on [Plaintiff's] performance during the evaluation tasks and based on a reasonable degree of medical certainty, . . . that [Plaintiff] would be unable to perform a job description at the **_sedentary work level_** on a full-time or even part-time basis." (AR. at 331) (emphasis in original.) Mr. Randall noted that Plaintiff's reported symptoms over the day following the FCE "confirmed [his] opinion regarding [Plaintiff's] inability to function at a **_sedentary work level_** on a day-to-day basis." (AR. at 331) (emphasis in original.) Mr. Randall discussed his observations, examination findings, and specific functional limitations in detail throughout the nine-page report and summary. (AR. at 325-34.)

16

17

18

19

20

21

22

23

24

     In ALJ Waters's partially favorable decision, she noted Mr. Randall completed the FCE at the request of an attorney "rather than in [the] course of treatment[,] and the objectivity of [Mr. Randall] cannot be presumed." (AR. at 780.) After describing the symptoms Plaintiff reported to Mr. Randall post-examination, the ALJ stated, "[T]his is only based upon the claimant's self-reported complaints that is not supported [*sic*] by the objective clinical evidence." (AR. at 780.) The ALJ continued, "As discussed in detail above, treatment records support the conclusion reached in this decision that [Plaintiff] is precluded from performing past work as previously performed, but the record does not support a finding that she was unable to perform sedentary work." (AR. at 780.)

25

26

27

28

     Plaintiff asserts the ALJ's stated reasons for rejecting Mr. Randall's opinion—(1) that Mr. Randall performed his examination at the request of an attorney and "is not objective," and (2) that his report is based on Plaintiff's subjective complaints—are not germane (Pl. Br. at 16-17.) Defendant responds that the nature of the relationship between

examiner and examinee is a relevant consideration under the regulations and the ALJ's reason to discount Mr. Randall's opinion was that it was "based, *in part*, on Plaintiff's self-reported symptoms rather than objective findings." (D. Br. at 15-16) (emphasis added.) Defendant explains that the ALJ's decision was reasonable "because [Mr. Randall's] report *was largely informed by* subjective complaints . . .," and that this is appropriate under the regulations (D. Br. at 16) (emphasis added.) The Court agrees with Plaintiff.

Physical therapists are considered "other sources" and are generally not afforded the same weight as treating physicians under the regulations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). To reject a physical therapist's opinion the ALJ must provide germane reasons that are substantiated by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

To begin, ALJ Waters did not explicitly or implicitly reject Mr. Randall's opinion on the basis it was the result of an attorney referral, stating only his objectivity "would not be presumed." (AR. at 780.) Even if she had, "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832 (internal citations omitted). This Court has previously held this rationale applies with equal force to the opinion of a non-acceptable medical source, such as Mr. Randall. *See Cotton v. Colvin*, 2017 WL 914617, at *4 (D. Ariz. Mar. 8, 2017) ("Discounting the medical opinions of Dr. Norris and [physician's assistant] Harris on the basis of their *assumed* motivations amounts to speculation. It does not constitute a clear and convincing reason for rejecting Norris or a germane reason for rejecting Harris.") (citing *Lester*, 81 F.3d at 832); *see Scruggs v. Colvin*, 2016 WL 2894422, at *4 (W.D. Wash. Mar. 28, 2016) (noting an ALJ may not assume, without citing proper evidence, a medical opinion from a treating non-acceptable medical source was given to assist a claimant); *Saltos v. Colvin*, 2014 WL 1415028, at *11 (E.D. Wash. Apr. 11, 2014) (citing the same rationale).

Regarding the ALJ's belief that Mr. Randall's report was "based upon the claimant's self-reported complaints," as Plaintiff correctly points out, Mr. Randall describes several tests he purported to have administered during the FCE, and states that his conclusions

regarding claimant's functionality were based on those test results. (AR. at 331.) The ALJ's statement that Mr. Randall's report was "based upon the claimant's self-reported complaints" is not completely accurate. The ALJ did not provide germane reasons supported by substantial evidence to reject Mr. Randall's report.

    **D.**    **The ALJ provided clear, convincing reasons supported by substantial evidence in rejecting Plaintiff's subjective symptom testimony during the periods of non-disability.**

Plaintiff argues that the ALJ "erred in her analysis of [Plaintiff's] credibility" because, in violation of federal regulation, 20 C.F.R. § 404.1529, the ALJ simply concluded "the objective medical evidence fail[ed] to support the severity of impairments and symptoms alleged." (Pl. Br. at 19-20.) Plaintiff asserts the ALJ concluded, after summarizing Plaintiff's medical records, that her symptom testimony "can't be verified by medical evidence." (Pl. Br. at 19, Reply at 6-7.) Plaintiff asserts, "The ALJ fails to identify which symptom testimony specifically conflicts with the medical records summarized." (Pl. Br. at 19, Reply at 7.)

In response, Defendant argues "the ALJ provided legally sufficient reasons, supported by substantial evidence" for rejecting Plaintiff's symptom testimony, including inconsistencies between Plaintiff's testimony and the objective evidence; claimant's course of treatment illustrating improvement or symptomatic control with medications and reliance on "conservative" treatment modalities; and the lack of mental health treatment records to substantiate any causality between a mental impairment and Plaintiff's physical issues. (D. Br. at 8-11.)

An ALJ performs a two–step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)).

If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015.

Notably, "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* The ALJ may, however, properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Moreover, general findings pertaining to a claimant's credibility are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). If the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the Social Security context). The ALJ may consider "[the claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties

1   concerning the nature, severity, and effect of the symptoms of which [s]he complains."

2   *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

3   The Court finds, contrary to Plaintiff's contention, the ALJ identified several bases

4   for rejecting or discrediting Plaintiff's symptom testimony during the periods of non-

5   disability: (1) that diagnostic testing and clinical findings did not justify greater limitations

6   than those identified by the ALJ (AR. at 773, 775)[8]; (2) that Plaintiff declined prophylactic

7   medications for headaches, "which suggests her symptoms were controlled," and that her

8   "use of medication is not consistent with severe and frequent migraines" (AR. at 775); and

9   (3) that Plaintiff's providers never prescribed an ambulatory device, despite Plaintiff's

10  treatment for injuries related to falls (AR. at 779.) Throughout her discussion of the

11  evidence supporting her RFC finding during the periods of non-disability, the ALJ

12  summarizes at length both evidence supporting and belying Plaintiff's symptom testimony.

13  The Court addresses each of the ALJ's stated reasons in turn.

### 1. The lack of objective or clinical evidence is not alone sufficient, but the ALJ may be consider it and note inconsistencies.

16  The ALJ's consideration of objective evidence is a necessary part of her evaluation

17  of a claimant's symptom testimony. 20 C.F.R. § 404.1529(c)(2) ("Objective medical

18  evidence of this type is a useful indicator to assist us in making reasonable conclusions

19  about the intensity and persistence of your symptoms and the effect those symptoms, such

20  as pain, may have on your ability to work. We must always attempt to obtain objective

21  medical evidence and, when it is obtained, we will consider it in reaching a conclusion as

22  to whether you are disabled."). While an ALJ is permitted to reduce the weight given to a

23  claimant's testimony if it is unsupported by objective medical evidence, this cannot be the

24  _____

25  [8] After noting "the record does not support a conclusion [Plaintiff] was more limited than found in this decision" (AR. at 773), the ALJ described what she perceived to be

26  benign diagnostic testing throughout the relevant period. (AR. at 773-74.) After summarizing portions of the medical record at length, the ALJ stated, "[Plaintiff] has a

27  history of treatment for multiple medical conditions, but the record does not support a finding she has been more limited than found in this decision" during the periods of non-

28  disability. (AR. at 778.) The ALJ then summarized a compilation of medical records she believed supported the limitations she assigned. (AR. at 778-79.)

sole reason the testimony is rejected. *Burch*, 400 F.3d at 681. Nevertheless, an ALJ must consider this evidence when assessing the probative value of a claimant's statements regarding the impact of her symptoms, and that is what the ALJ did here.

As the ALJ noted, and as the record bears out, diagnostic imaging of Plaintiff's brain, spine, and other joints repeatedly produced mild or unremarkable findings. (AR. at 773-74.) The lack of compelling diagnostic signs—considering Plaintiff's longstanding report of symptoms related to cervical disk disease and upper extremity numbness, tingling, weakness, and pain—is a significant factor for the ALJ to examine, as those impairments ought to be evident, to some degree, from radiographical imaging or electrodiagnostic testing. Magnetic Resonance Imaging ("MRI") of Plaintiff's cervical spine has revealed a disk osteophyte complex at the C5-6 level, narrowing the subarachnoid space and neural foramen, but not resulting in cord compression or signal abnormality. (AR. at 701, 742, 729, 1154-55, 1178, 1184-85.) Electrodiagnostic testing of Plaintiff's upper extremities has not produced findings to corroborate her reported symptoms of weakness and radiating pain (AR. at 737), despite her many complaints of weakness, numbness, tingling, and pain in her upper extremities. (AR. at 364, 382, 415, 472, 574, 577, 733, 1111, 1113, 1173.) MRIs of Plaintiff's brain are normal and unable to explain the etiology of her headaches or falls. (AR. at 1119, 1177.) Thoracic and lumbar imaging has not produced anything corroborative (AR. at 311, 441, 1122) although Plaintiff repeatedly noted lower back pain. (AR. at 382, 551, 560, 569, 577.) While this lack of convincing diagnostic evidence is insufficient alone and does not account for Plaintiff's symptoms or resulting limitations from fibromyalgia, which is not amenable to confirmation by radiographical evidence, *e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017), the lack of objective findings does come to bear on the severity and extent of Plaintiff's other impairments, including cervical disk disease, and the symptoms attributable to those impairments. The ALJ was correct to consider this evidence.

The ALJ also cited sporadic clinical notes in support of particular limitations she assigned, such as a lack of lower extremity weakness despite Plaintiff's complaints of falls

and lower extremity pain; mild left arm weakness and no sensory loss or decreased reflexes despite complaints of arm and hand pain; a negative clinical test to substantiate reports of numbness or tingling in the fingertips; and notes of symmetric strength. (AR. at 778.) Of note, the ALJ cited a collection of medical records to illustrate convincingly that Plaintiff repeatedly exhibited a normal gait during the relevant period. (AR. at 778.) Without directly citing Plaintiff's specific symptom testimony, it is clear such evidence belies her statements regarding her limited ability to stand or walk. Normal gait findings reasonably undermine that. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Because the Court finds the ALJ cited substantial evidence in support of her conclusion Plaintiff's gait was normal, and that her consideration of this evidence was appropriate, it need not address the other specific clinical findings regarding Plaintiff's upper extremities, which the Court notes are scarcely cited.

### 2. Substantial evidence does not support the ALJ's conclusion medications controlled Plaintiff's headaches or that she refused prophylactics.

The ALJ asserted Plaintiff declined prophylactic medications for migraines; that her "use of medication is not consistent with severe and frequent migraines"; that there is "no reason to believe" Plaintiff's symptoms would not improve on a regimen of prophylactic medications; that Plaintiff reported control of migraines on medications; and that she did not return to her neurologist, "which suggests her headache symptoms were improved and controlled with medication." (AR. 779.)

Noting Plaintiff's supposed headache control, the ALJ cited the July 29, 2013, October 28, 2013, and January 24, 2014 treatment records of Plaintiff's internist, Dr. Duong. (AR. at 779.) The Court discusses each in turn.

Dr. Duong's July 2013 note reflects "intermittent acute flare ups" of Plaintiff's migraines and fibromyalgia, even during rest, but improvement of symptoms on "current Rx and rest/sleep." (AR. at 389.) Plaintiff indicated she had run out of medications, which

precipitated a worsening of symptoms. (AR. at 389.) Dr. Duong noted Plaintiff should "[c]ontinue to be off work for evaluation and Rx." (AR. at 392.)

In October 2013, Dr. Duong indicated "Migrain[e] [headache] so far has been controlled with [medications]," but that "[i]t got worsened [*sic*] stress/insomnia, along with her [f]ibromyalgia." (AR. at 382.) Importantly, Dr. Duong documented Plaintiff's report of neck and upper back pain radiating into both arms with arm and hand numbness and tingling. (AR. at 382.) Dr. Duong noted Plaintiff experienced side effects with medications. (AR. at 382.)

Dr. Duong's January 2014 note begins as follows: "[Plaintiff] has continued to experience neck pain, body muscle pain, and weakness/numbness of her upper extremities, despite [n]egative EMG/NCV. She and her husband think she is getting worse. She has more frequent [headaches], which is still controlled [*sic*] on medications. She has less physical endurance, of even house works [*sic*], and needs to rest/lay down more. Her husband feels that she is worsened and he thinks he needs FMLA to be extended to more than [one] day each episode so he can stay home and help her when needed." (AR. at 375.)

The evidence cited by the ALJ noted inconsistent or sporadic control of headaches. While the Court notes that, elsewhere in the record, Plaintiff reported headache "control" to providers on several occasions (AR. at 382, 577, 1114), considering the entire record, it would appear symptomatic control of her headaches and other symptoms was short-lived. Even with brief symptomatic control of headaches, Plaintiff often described other worsening symptoms.

For instance, Plaintiff reported headache "control" on Rizatriptan and Fioricet in January 2014, but also continuing pain in the head, neck, and back, with symptoms worsening commensurate with stress and insomnia; "pain shooting down to [her] arms with numbness/tingling"; and dropping objects due to hand pain and weakness. (AR. at 577.) Plaintiff reported a progressive worsening in her conditions. (AR. at 577.)

When she presented for a neurology visit in April, Plaintiff reported "poor control" of her headaches, which were occurring daily and accompanied by vomiting two-to-three

times per week, in addition to other symptoms including hand weakness, intermittent numbness, and chronic neck pain. (AR. at 733.) Her providers administered injections for her pain control, but Plaintiff reported a poor result. (AR. at 565.) By November, Plaintiff continued to experience daily headaches and nausea with weakness and pain in her hands. (AR. at 472.) In her visit with Dr. Patel in February 2015, Plaintiff noted she continued to experience "persistent occipital headaches, dizziness and near syncopal type episodes." (AR. at 693.) In July 2015, she reported a "massive headache" necessitating a trip to the emergency room. (AR. at 698.)

Throughout the remainder of 2015 and 2016, Plaintiff continued to report fluctuating symptoms resulting in good days and bad. (AR. at 533, 604.) In September 2017, however, Plaintiff noted her headaches were "constant." (AR. at 1113.) She also explained that her headaches were "controlled" on Fioricet, but not completely relieved. (AR. at 1114.) Dr. Patel noted during that visit, "Overall, [Plaintiff] has multiple issues that probably preclude her ability to perform and consistent sedentary-level activity." (AR. at 1114.)

Considering the entire record, symptomatic improvement or control is not a clear and convincing basis for rejecting Plaintiff's symptom testimony here. The medical record illustrates convincingly that Plaintiff has struggled with symptomatic control of her headaches throughout the entire relevant period and that, even when she did report temporary control, her other symptoms were often problematic. The ALJ's supposition Plaintiff's use of prophylactic medications would resolve her symptoms is speculative. *See Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) (rejecting an ALJ's assertion claimant's complaints would have improved with medication compliance when the ALJ made no citation to the record in support, no doctor connected claimant's increased symptoms with medication noncompliance, and it was not otherwise substantiated in the record.). The ALJ cites nothing in the record to support this statement. Moreover, it is unclear to the Court that Plaintiff, in fact, declined prophylactic medications.

1      In March 2014, Plaintiff reported to her treating internist, Dr. Bin Than Duong, that
2  she preferred to wait until after her upcoming neurologist appointment before agreeing to
3  a regimen of prophylactic medications for migraines. (AR. at 569, 572.) Plaintiff reported
4  "bad side effects" on a previous course of Amitriptyline. (AR. at 569.) In her follow-up
5  with neurologists at Barrow General Neurology in April 2014, Plaintiff submitted to
6  bilateral occipital nerve blocks. (AR. at 730-31.) Dr. Duong's treatment note from May
7  2014 reflects Plaintiff reported poor results from those nerve blocks. (AR. at 565.) Plaintiff
8  stated her neurologists planned a course of prophylactic medications, but it was delayed
9  pending her response to the nerve blocks. (AR. at 565.) In her July 2014 neurology follow-
10  up, Plaintiff reported "the nerve blocks didn't help." (AR. at 743.) She and her physicians
11  did not discuss the use of prophylactic medications, but Plaintiff reportedly requested
12  "conservative treatment as mild disease [*sic*]." (AR. at 747.) Resident neurologist, Deepak
13  Kalra, M.D. instructed Plaintiff to continue current medications, refrain from taking
14  abortive medications for migraines more than twice per week, keep a headache diary,
15  engage in regular exercise, and return to the clinic in six months. (AR. at 747.) Dr. Kalra
16  referred Plaintiff to a physical medicine and rehabilitation physician "for neck stiffness and
17  pain and plan for management strategies." (AR. at 747.) In November 2014, Plaintiff
18  returned to Barrow with complaints of daily headaches, constant nausea, and pain. (AR. at
19  472.) Her treatment plan remained the same, except Dr. Kalra prescribed an increase in
20  Gabapentin to 300mg three times daily and ordered the substitution of Sumatriptan for
21  Butalbital medications. (AR. at 475.) In her initial visit with physical medicine physician,
22  Atul Patul, M.D., Plaintiff noted she was taking Gabapentin, "which helps her headaches
23  at bedtime . . . ." (AR. at 693.) By May 2015, Plaintiff requested a refill of Gabapentin
24  from Dr. Duong, but stated "she could only tolerated [*sic*] low dosage." (AR. at 608.) Dr.
25  Duong restarted Gabapentin at 100mg once nightly (AR. at 549.)
26      The record supports that Plaintiff did not refuse prophylactic medications, but only
27  agreed to wait, pending the results of her occipital nerve blocks. Importantly, she reported
28  side effects on a previous prophylactic medication, Amitryptiline. (AR. at 569.) *Smolen*,

80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so."). From that point forward, the record provides insufficient evidence Plaintiff steadfastly refused certain prophylactic medications, but it would appear Plaintiff and her various providers settled on a regimen of other medications. What is clear is that the ALJ failed to substantiate her position Plaintiff "declined prophylactic medications" with any citation to the record. The Court deems the ALJ's analysis of Plaintiff's headache treatment not sufficiently clear, convincing, or supported by substantial evidence.

> **3.    Plaintiff's failure to utilize an ambulatory assistive device is a clear, convincing reason supported by substantial evidence from the record.**

The ALJ noted Plaintiff's providers had not prescribed an assistive device, despite her history of falls. (AR. at 779.) Plaintiff testified she did not use an ambulatory assistive device, but "probably should've." (AR. at 809.) She testified she "use[s] [her] husband a lot." (AR. at 809.) Regarding her ability to stand or walk, Plaintiff testified she does not "go[] anywhere and stand for hours,' but that she could "go to the grocery store . . . [and] walk around for half an hour." (AR. at 811.) Plaintiff testified she feels "such a heaviness" when standing. (AR. at 811.) She stated she could walk when she needed to, but "would have to be careful," especially during episodes of dizziness. (AR. at 811.) She testified to walking her dog down her street "about three or four houses down" accompanied by her husband. (AR. at 811.)

The Court finds this reason to be clear and convincing. Plaintiff reported a multitude of falls throughout the relevant period (AR. at 495, 545, 682-83, 691, 695, 733, 1113, 1123, 1145, 1189, 1199), some of which required emergent care. (AR. at 1145, 1162, 1189.) In June 2016, she reported to an attending physician at the E.R. that she had experienced five falls in one 24-hour period. (AR. at 1145.) During a July 2016 visit with Dr. Patel, she reported ten falls over the previous two months. (AR. at 682-83.) At her second hearing, Plaintiff testified she is unable to shower outside her husband's presence due to the

likelihood of a fall. (AR. at 813.) Despite the clear risk, Plaintiff herself testified she requires no assistive device for ambulation, which is a clear, convincing inconsistency sufficient to reject Plaintiff's symptom testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (noting a "relevant factor" in determining the credibility of a claimant's allegations of pain may be the "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.") (internal quotations and citations omitted). "Moreover, a claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Molina v. Astrue*, 675 F.3d 1104, 1113-14 (9th Cir. 2012.) (citing *Fair*, 885 F.2d at 603). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982.)

Here, it stands to reason that an individual who routinely falls in a manner to sustain injury, would seek a remedy. The Court finds that the above evidence cited by the ALJ does undermine the statements made by Plaintiff. Though the ALJ did not always directly link each piece of cited evidence to a particular statement made by Plaintiff, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern her path and meaningfully determine that her conclusions are clear, convincing, and supported by substantial evidence. *Brown-Hunter*, 806 F.3d at 492. Thus, the Court finds the above reason sufficiently specific, clear, and convincing and supported by substantial evidence in the record.

In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's statements not fully supported prior to January 29, 2018 or after March 26, 2019. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported her decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

### E.   The appropriate remedy is to remand Plaintiff's case for additional proceedings.

The circumstances do not warrant application of the credit-as-true rule. *Garrison*, 759 F.3d at 1020. The rule applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule allows for some flexibility and balances efficiency and fairness with the requirement that a claimant actually be disabled in order to receive benefits. *Id*. at 1021. Thus, even if all the rule's requirements are met, the Court may still decline to apply the rule if there is "serious doubt" that the claimant is, in fact, disabled. *Id*.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated using the proper standards. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate.

While the Court is not eager to remand this case yet again for an ALJ's failure to provide adequate reasons for rejecting a seven-year-old physical therapist's report, the Court finds the ALJ's analysis of this report patently insufficient and especially egregious considering the fact this Court once remanded Plaintiff's claim on that basis. These considerations justify remanding this case for additional proceedings consistent with this opinion.

**IT IS THEREFORE ORDERED** reversing the May 5, 2020 decision of the Administrative Law Judge (AR. at 756-783).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for additional proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 10th day of November, 2021.

Honorable John J. Tuchi
United States District Judge